GEORGE F. VICTOR AND OTHERS, RESPONDENTS, *v.* MOSES HENLIEN AND OTHERS, APPELLANTS.

33h 549
57ad453

WILLIAM E. ISELIN AND OTHERS, RESPONDENTS, *v.* THE SAME, APPELLANTS.

EMIL OELBEMAN AND OTHERS, RESPONDENTS, *v.* THE SAME, APPELLANTS.

*Attachment — when issued because of fraudulent statements made by a vendee to induce a sale — statements of the vendee made to a mercantile agency — when the retention of money for family expenses prior to the making of a general assignment will not authorize the issuing of an attachment.*

APPEALS from orders made at Special Term denying motions to vacate attachments.

The affidavits in these several cases were all of the same kind, changes of names and amounts being made.

The General Term, after holding that the debts were not by the terms of the sales due when the actions were commenced, said: "The second ground is that the debts for the goods sold were presently due because the sales were procured by fraudulent representations. No such fraudulent representations are claimed to have been made to the plaintiffs at the time of the purchases to induce the sales, but it is claimed that misrepresentations were made to mercantile agencies, who furnished the same to the several plaintiffs, and they acted in dealing with defendants on the credit of such statements. The defendants appear to have been for a long time in business with an established credit. The mercantile agencies from time to time had entered on their books what are said to have been statements substantially made by the defendants as to their capital stock on hand and condition generally. And these statements were furnished by the agencies to the plaintiffs as their customers. The affidavits on the part of the defendants show or tend to show that the alleged statements were not made, as reported, by the agencies, but that portions of them as made were materially different from the mercantile reports. On looking through the affidavits it is quite apparent that this ground for claiming the maturity of the debts is an afterthought, not relied upon on the first motion, but growing out of an intimation in the opinion of the court granting the motions, to the effect that fraud in contracting the debts might be shown upon the trial to establish that they were due when the suits were brought. We are not satisfied by the affidavits that any such alleged fraud was committed. To accomplish the purpose in view the plaintiffs should be held to show in substance that the goods were obtained on credit by false pretenses, otherwise every merchant who buys a bill of goods is at the mercy of the mercantile agencies and liable to immediate suit, arrest and imprisonment for discrepancies which appear between the agency reports and his real condition. Where the only representations made are those furnished to sellers by the agencies, it must be clearly shown that the accused buyer made the statements to the agency with fraudulent intent to use such agency as an instrument in accomplishing a fraud upon his vendor or some other dealer. In this

case that fact is not so clearly disclosed as to justify us in saying that a fraud was perpetrated through the medium of the agency of a character sufficient to justify proceedings therefor, either criminal or civil.

"The question whether the evidence shows a fraudulent disposition of the property of the defendants sufficient to justify an attachment is a secondary one. The defendants made an assignment for the benefit of their creditors. Within a few weeks before making the assignment they, in contemplation of it, paid off a considerable indebtedness owing to a former partner who had some years previously retired from the firm, leaving his liquidated capital and profits in the business, as a loan to the new firm, subject to call. The payment of such a debt, if actual and honest, would be no fraud *per se.* It in that case would be as much a debt of the firm as any other for borrowed money, and being due presently could be either paid or preferred, if genuine, at the option of the debtors. The defendants also, in contemplation of the assignment and within a few preceding weeks, drew out respectively from the firm certain sums of money to meet their small individual debts then owing for expenses of living already accrued, and to provide funds for the support of their families for a few months, till they could settle their affairs and resume business in some form. Whether this transaction would avoid the assignment when assailed by creditors is one question. Whether it is such an actual fraudulent disposition of property as entitles creditors to proceed by attachment or warrant of arrest is quite another. The latter question would depend largely upon the intent or good faith of the debtor — whether he acted upon advice or a belief of legal right to make such withdrawal to meet the exigencies of his family, with no intent to defraud creditors, or with design to conceal property for the purpose of defrauding them. In this case the defendants stated frankly and fully to the creditors what they had done, and seem to have concealed nothing in that regard. The act was a mistake as to these rights, and doubtless an illegal one; but, as shown by the affidavits in this case, we think it was not such a fraudulent disposition of property as entitles a simple creditor to attachment under the provision of the Code."

*Blumenstiel & Hirsch,* for the appellants.

*James Dunne,* for the respondents.

Opinion by DAVIS, P.; J. BRADY and DANIELS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motions to vacate granted, with ten dollars costs of one motion.